ROBERT J. VISSA, JR., ET AL. *v.* ALAN R. PAGANO
(AC 26494)

Schaller, McLachlan, and Stoughton, Js.

Argued January 10—officially released April 17, 2007

resolution of this matter does not preclude the plaintiff from seeking redress in a South Carolina court.

David M. Wallman, for the appellants (plaintiffs).

Andrew P. Nemiroff, with whom, on the brief, was Eric R. Posmantier, for the appellee (defendant).

Opinion

McLACHLAN, J. The plaintiffs, Robert J. Vissa, Jr., and Pagano Seafood, Inc.,[1] appeal from the judgment of the trial court rendered following a hearing in damages before an attorney trial referee (referee). On appeal, the plaintiffs claim that the court improperly (1) rendered judgment affirming the recommendation of the referee to award damages in favor of the individual plaintiff and not the plaintiff corporation, (2) rendered a judgment of damages without shifting the burden of proof to the defendant, Alan R. Pagano, to demonstrate why a constructive trust should not be imposed in favor of the plaintiff corporation, and (3) permitted the defendant to retain assets and profits belonging to the plaintiff corporation that the defendant misappropriated in a fiduciary capacity. We conclude that the plaintiffs have failed to furnish us with an adequate record to review their claims. Accordingly, we affirm the judgment of the trial court.

This case has a convoluted history, spanning approximately the last fifteen years. In February, 1992, the individual plaintiff, a lobsterman by trade, and the defendant, a fish merchant, formed the plaintiff corporation, a wholesale seafood business. The company began operating in Norwalk in March, 1992, with the individual plaintiff and the defendant each contributing equally to the venture.

---

[1] For convenience, we hereinafter refer to Vissa as the individual plaintiff and to Pagano Seafood, Inc., as the plaintiff corporation.

The business relationship between the parties turned sour in September, 1992, when the defendant informed the individual plaintiff that he no longer wanted to do business as Pagano Seafood, Inc. On September 9, 1992, the defendant paid himself a salary of $5000, and the next day he continued to operate the business as a sole proprietorship called "Pagano's."[2]

On October 13, 1994, the defendant paid $36,888.98 to the individual plaintiff, which, according to the defendant, represented the individual plaintiff's capital contributions to the start-up of the business, along with interest through January, 1992. On September 18, 1998, the plaintiffs filed a five count complaint against the defendant, alleging breach of contract, misappropriation, unjust enrichment, breach of fiduciary duty, breach of an agreement to arbitrate and violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. The plaintiffs' third count, which alleged, in part, unjust enrichment, was brought ostensibly as a shareholder derivative action by the individual plaintiff on behalf of the plaintiff corporation.

On April 16, 1999, the defendant filed a motion for summary judgment as to all counts. On September 29, 1999, the court issued a memorandum of decision, finding that the majority of the plaintiffs' claims were barred by the statute of limitations and granting the motion for summary judgment as to all but the portion of the third count that alleged unjust enrichment.[3] With respect to the unjust enrichment cause of action, the

---

[2] After September, 1992, the status of the plaintiff corporation as a legal entity is unclear. The department of revenue services certified that the plaintiff corporation has been inactive since December 31, 1992. The plaintiffs introduced evidence, however, of a certification by the secretary of the state indicating that the plaintiff corporation remained incorporated under the laws of Connecticut as of November 3, 2000.

[3] With respect to the third count, the court granted the motion for summary judgment as to the plaintiffs' claims for tortious interference, misappropriation and breach of fiduciary duty.

court found that the allegations were sufficient to state a derivative claim for unjust enrichment in that the complaint alleged that the defendant caused the operation of the business to be taken over by a competitor, the defendant, and that the plaintiff corporation suffered a detriment as a result.

On November 18, 1999, the defendant moved again for summary judgment on the grounds that the plaintiffs had not stated adequately a claim for unjust enrichment and that the claim was barred by the statute of limitations. On May 1, 2000, the court issued a memorandum of decision denying the motion for summary judgment. Subsequently, the court referred the case to the referee for trial pursuant to General Statutes § 52-434 (a) (4) and Practice Book § 19-2A.

On November 7, 2000, and January 25, 2001, the referee conducted a trial on the liability phase of the case.[4] On August 13, 2001, the referee issued a report on the issue of liability, finding in favor of the individual plaintiff on the unjust enrichment claim, concluding, "I find in favor of *the plaintiff, Robert J. Vissa, Jr.*, on the issue of liability." (Emphasis added.) The plaintiffs did not object to the liability report.[5]

On September 23, 2003, the parties came before the referee for the damages phase. According to the referee, the individual plaintiff contended that he was entitled to the value of 49 percent of the business of the company that the defendant formed upon splitting with the individual plaintiff, as of January 2, 2001. The defendant argued that the measure of damages should be the difference between the amount that the defendant had already paid to the individual plaintiff, i.e., the

---

[4] The referee bifurcated the proceedings into two phases, the first phase addressing the issue of liability and the second phase resolving the plaintiffs' claim for damages.

[5] The defendant filed an objection that was subsequently withdrawn.

$36,888.98, paid on October 13, 1994, representing the individual plaintiff's capital contributions, and the actual value of those assets in September, 1992. Each side presented expert testimony on the issue of damages.

On August 2, 2004, the referee issued a report, siding with the defendant. Specifically, the referee determined that it would not be equitable to award any part of the increased value of the defendant's business to the individual plaintiff because the individual plaintiff neither contributed to the success of the enterprise since 1992 nor bore any risk of loss in the business. Accordingly, the referee found that the individual plaintiff was entitled to $17,501.02, which reflected the difference between the amount already paid by the defendant to the individual plaintiff and the value of the business as of September 30, 1992, with interest.

On August 20, 2004, the plaintiffs, pursuant to Practice Book § 19-14, filed an objection to the referee's report and recommendations. On April 2, 2005, the court issued a memorandum of decision affirming the referee's decisions. With respect to damages, the court found no material error in the referee's report or other sufficient reason to render the report unacceptable. Accordingly, the court adopted the referee's recommendations and rendered judgment in favor of the individual plaintiff in the amount of $34,127. This appeal followed.

I

The plaintiffs first claim that the court improperly affirmed the referee's determination awarding damages to the individual plaintiff, without regard to the plaintiff corporation. The plaintiffs argue that because the only matter before the court was a shareholder derivative action brought by the individual plaintiff on behalf of the plaintiff corporation, the court's damages award to

only the individual plaintiff was improper.[6] Essentially, the plaintiffs argue that the court improperly rendered a judgment of damages in favor of the wrong plaintiff. Because the record is inadequate to permit appellate review, we decline to reach the merits of this claim.[7]

To ensure proper appellate review of a claim, "[i]t is incumbent upon the appellant to take the necessary steps to sustain its burden of providing an adequate record for appellate review. . . . [A]n appellate tribunal cannot render a decision without first fully understanding the disposition being appealed. . . . Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court." (Internal quotation marks omitted.) *Stutz* v. *Shepard*, 279 Conn. 115, 125–26, 901 A.2d 33 (2006). "[A]n articulation is appropriate where the trial court's decision contains some ambiguity or deficiency reasonably susceptible of clarification. . . . [P]roper utilization of the motion for articulation serves to dispel any . . . ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal." (Internal quotation marks omitted.) *Stone-Krete Construction, Inc.* v. *Eder*, 280 Conn. 672, 685–86, 911 A.2d 300 (2006).

Here, beginning with the complaint, the record is replete with ambiguity with respect to the identity of the party plaintiffs seeking relief. The complaint does not reference the plaintiff corporation until the operative third count, which contains no heading.[8] In relevant

[6] The distinction, according to the plaintiffs, is important because a successful plaintiff shareholder in a derivative action may be entitled to reimbursement for attorney's fees by the corporation. See General Statutes § 33-726.

[7] Without an articulation, we cannot determine what law and facts the court relied on in rendering its decision, and we therefore decline to set forth a standard of review.

[8] It should be noted that despite the plaintiffs' assertion that the action is, in part, a shareholder derivative suit, the complaint does not allege sufficient facts to support that the individual plaintiff has standing to bring

part, that count states, "Plaintiff Pagano Seafood, Inc. brings this action by Robert Vissa, a stockholder therein." The fifth count of the complaint identifies two plaintiffs, the individual plaintiff and the plaintiff corporation. The prayer for relief in the complaint begins, however, in the singular, seeking relief only for "the [p]laintiff . . . ."

This ambiguity continues in the referee's report on liability. In that report, the referee framed the issue by stating that "[t]he only remaining cause of action in the *plaintiffs'* case is a derivative claim of unjust enrichment, which is found in count three of the *plaintiff's* original complaint. The issue is whether the defendant, Mr. Pagano, *to the detriment of the plaintiff, Mr. Vissa,* obtain[ed] something of value to which he was not entitled . . . ." (Citation omitted; emphasis added; internal quotation marks omitted.) The referee concludes the report by finding "in favor of *the plaintiff, Robert J. Vissa* on the issue of liability." (Emphasis added.)

The report of the referee on damages begins by noting that in the prior decision on liability, the referee "found in favor of the *plaintiff* on *his* unjust enrichment claim." (Emphasis added.) Throughout that report, the referee discussed only the individual plaintiff, without reference to the plaintiff corporation as a party plaintiff, and without indication that the individual plaintiff had brought the action in his capacity as a shareholder on behalf of the plaintiff corporation. Neither the liability report nor the damages report provides a discussion regarding the referee's factual or legal bases for awarding damages to the individual plaintiff and not the plaintiff corporation.

In the court's April 1, 2005 memorandum of decision, the court rendered judgment in favor of the individual

a derivative action or has complied with statutory notice requirements. See General Statutes §§ 33-721, 33-722.

plaintiff only as to liability, on the basis of the referee's report. In a footnote following this finding, the court stated that "[t]he attorney trial referee determined that the defendant was liable to the individual plaintiff . . . and did not refer to the corporate plaintiff receiving a monetary award. Hence, references to the plaintiff in this memorandum of decision refer to [the individual plaintiff] and not the plaintiff corporation, Pagano Seafood, Inc." As with the referee's reports, the court's decision provides no analysis with respect to the conclusions regarding liability and the award of damages to the individual plaintiff and not the plaintiff corporation.

The plaintiffs argue that they objected specifically to the acceptance of the referee's damages report on the basis that the report failed to refer to the corporate plaintiff, and the court simply declined to address the issue. The plaintiffs concede, however, that they did not seek an articulation of the court's April 1, 2005 decision.

Upon review of the record, it is unclear from either the reports of the referee or the court's April 1, 2005 decision whether the determination to award damages to the individual plaintiff and not the plaintiff corporation was made on the basis of factual conclusions or legal conclusions,[9] or both, or whether the court simply

---

[9] Without deciding the issue, we note that other states have adopted the view that "[i]n the case of a closely held corporation . . . the court in its discretion may treat an action raising derivative claims as a direct action, exempt it from those restrictions and defenses applicable only to derivative actions, and order an individual recovery, if it finds that to do so will not (i) unfairly expose the corporation or defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested parties." (Internal quotation marks omitted.) *Trieweiler* v. *Sears*, 268 Neb. 952, 983, 689 N.W.2d 807 (2004), citing 2 A.L.I., Principles of Corporate Governance: Analysis and Recommendations (1994) § 7.01 (d), p. 17; see also *Barth* v. *Barth*, 659 N.E.2d 559 (Ind. 1995); *Mynatt* v. *Collis*, 274 Kan. 850, 57 P.3d 513 (2002); *Derouen* v. *Murray*, 604 So. 2d 1086 (Miss. 1992); *Durham* v. *Durham*, 151 N.H. 757, 761–62, 871 A.2d 41 (2005); *Schumacher* v. *Schumacher*, 469 N.W.2d 793 (N.D. 1991); *Aurora Credit Services, Inc.* v. *Liberty West Development, Inc.*, 970 P.2d 1273 (Utah 1998), on appeal after remand,

overlooked the issue. See *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 53, 717 A.2d 77 (1998) ("[i]t is . . . the responsibility of the appellant to move for an articulation or rectification of the record where the trial court has failed to state the basis of a decision . . . to clarify the legal basis of a ruling . . . or to ask the trial judge to rule on an overlooked matter" [citations omitted]). Under these circumstances, the plaintiffs should have filed a motion for articulation to preserve an adequate record for review. See Practice Book §§ 61-10 and 66-5. Accordingly, in the absence of an articulation, we are unable to determine the basis for the court's decision and therefore decline to engage in a speculative review of the court's decision.

## II

The plaintiffs claim next that the court improperly rendered a judgment of damages without shifting the burden of proof to the defendant to demonstrate by clear and convincing evidence why a constructive trust should not be imposed in favor of the plaintiff corporation. The plaintiffs argue that the referee's damages report and the court's April 1, 2005 memorandum of decision are silent as to the standard of proof applied and that such a silence constitutes reversible error unless the language of the decision implies that a more rigorous standard of proof was applied. Because the record is inadequate to permit appellate review, we also decline to reach the merits of this claim.

The plaintiffs cite *Hieble* v. *Hieble*, 164 Conn. 56, 62, 316 A.2d 777 (1972), for the proposition that when a fiduciary relationship has been established, the burden

129 P.3d 287 (Utah App.), cert. denied, 138 P.3d 589 (Utah 2006); but see *Simmons* v. *Miller*, 261 Va. 561, 544 S.E.2d 666 (2001) (declining to adopt § 7.01 [d] exception); see also *Landstrom* v. *Shaver*, 561 N.W.2d 1 (1997) (same), on appeal after remand, 583 N.W.2d 643 (S.D. 1998).

of proof rests on the party denying the existence of a constructive trust and then, by clear and convincing evidence, to negate such a trust. The plaintiffs point out that generally, when a court's memorandum of decision is silent as to the standard of proof used, it is assumed that the fair preponderance of the evidence standard was used. See *Citino* v. *Redevelopment Agency*, 51 Conn. App. 262, 270, 721 A.2d 1197 (1998). The plaintiffs argue that because the referee's reports and the court's decision are silent with respect to whether the burden of proof was shifted to the defendant, a new trial is required.

It is the plaintiffs' responsibility to present a record adequate for appellate review of its claim of error. See *Rollar Construction & Demolition, Inc.* v. *Granite Rock Associates, LLC*, 94 Conn. App. 125, 134, 891 A.2d 133 (2006). "In the absence of an adequate record, we presume that the trial court, in rendering its judgment undertook the proper analysis of the law and the facts." Id. As previously stated, the referee's report on liability presents an ambiguity with respect to the identity of the party plaintiffs. That report ambiguously references a breach of fiduciary duty "to the plaintiff."[10] The issue was not properly clarified in either the damages report or the court's memorandum of decision. Without clarification, we are unable to determine whether the defendant breached his fiduciary duty to the individual plaintiff or the plaintiff corporation, or both, and what relevance, if any, this breach had on the court's award of damages.

Thus, resolution of this claim would require us to speculate as to the court's reasoning with respect to the

---

[10] In the report, the referee stated that "[a]s an officer of Pagano Seafood, Inc., the defendant 'breach[ed] [his] fiduciary duty to the plaintiff entitl[ing] the plaintiff to damages, including reimbursement of any . . . profits the [defendant] received through improper use of partnership funds.' *Spector* v. *Konover*, 57 Conn. App. 121, 132, 747 A.2d 39, cert. denied, 254 Conn. 913, 759 A.2d 507 (2000)."

decision to award damages to the individual plaintiff, without regard to the plaintiff corporation. We have already concluded that the record is inadequate to permit appellate review of that claim. Accordingly, in the absence of such an articulation, we are unable to determine the basis for the court's decision, and we therefore decline to review this claim as well.

### III

The plaintiffs' final claim is that the court improperly permitted the defendant, as a fiduciary, to retain misappropriated assets without dissolving the plaintiff corporation and engaging in the windup and liquidation of the plaintiff corporation's business and affairs. This claim presumes that the defendant, in his capacity as a fiduciary, was liable for injury caused *to the plaintiff corporation.* Such a finding was not made, however, by the court. Therefore, resolution of this claim also hinges on resolution of the reasoning behind the court's decision with respect to its award of damages only to the individual plaintiff without regard to the plaintiff corporation. Because the plaintiffs never attempted to resolve that issue by way of a motion for articulation or rectification of the court's decision, we decline to review this claim. See *Stone-Krete Construction, Inc.* v. *Eder,* supra, 280 Conn. 686.

The judgment is affirmed.

In this opinion the other judges concurred.