CONSTRUCTION KEN-NECTION, INC. *v.* DIANNE
CIPRIANO ET AL.
(AC 31778)

Beach, Robinson and Sheldon, Js.

Argued January 30—officially released July 3, 2012.

*James Stedronsky*, for the appellant (plaintiff).

*R. Bradley Morris*, for the appellee (named defendant et al.)

*William C. Franklin*, with whom, on the brief, was *Thomas W. Mott*, for the appellee (defendant Naugatuck Valley Savings and Loan).

BEACH, J. The plaintiff, Construction Ken-nection, Inc.,[1] appeals from the judgment of the trial court concluding that the mechanic's lien it filed in connection with a residential construction project for the defendants Dianne Cipriano and Joseph Cipriano (collectively, Ciprianos) was invalid and, accordingly, dismissing the plaintiff's action to foreclose its mechanic's lien, which the plaintiff claims is prior in right to the construction mortgage held by the defendant Naugatuck Valley Savings and Loan.[2] On appeal, the plaintiff challenges as clearly erroneous the factual findings of the court that the Ciprianos did not knowingly consent to the expanded work done or proposed by the plaintiff, that certain work that was purportedly done was not within the contract, that the filing of the lien was beyond the ninety day statutory limitation, and that the plaintiff failed to establish probable cause that any amounts claimed were within the terms of the contract, verbal amendments or change orders. Because the court's findings were not clearly erroneous, we affirm the judgment of the trial court.

The following facts, as found by the court and as gleaned from the record, and procedural history are relevant to our resolution of the plaintiff's appeal. On

[1] Kenneth M. Beaudoin is the principal representative and co-owner of the plaintiff, Construction Ken-nection, Inc. He signed documents relevant to this case in his official capacity. The plaintiff acted through Beaudoin in the course of the relevant transactions.

After oral argument before this court, the plaintiff moved to substitute as the plaintiff Anthony Novak, bankruptcy trustee for the estate of Construction Ken-nection, Inc. That motion was granted on February 24, 2012. For the sake of convenience and clarity, we still use the term "plaintiff" to refer to Construction Ken-nection, Inc.

[2] Lorraine Cipriano was also named as a defendant because of her ownership interest in the property subject to the lien but is not a party to this appeal. Dick's Artesian Well Drilling, Inc., and Hocon Gas of Torrington, LLC, were also named as defendants in this action but are not parties to this appeal.

January 6, 2005, the plaintiff and the Ciprianos entered into a written contract providing that the plaintiff would construct a log home in Harwinton for $155,000, excluding site work such as foundation excavation and septic system installation. The contract provided: "Any alterations or deviations from the above scope of work involving extra costs, will be executed only upon written orders, and will become an extra charge [over] and above the estimate." After the contract was signed, the Ciprianos had a septic system installed at a cost of $30,000. Subsequently, in or around early February, 2005, the parties learned that, in order to obtain a building permit to build the house, a new driveway would have to be constructed on the lot. The parties then modified and extended their contract by oral agreement that the plaintiff would perform site work, including building the driveway, at a cost of $45,000 to $50,000. It is undisputed that there were no change orders executed in writing.

On or about January 18, 2006, the Ciprianos obtained a construction loan secured by a mortgage from Naugatuck Valley Savings and Loan in the amount of $240,000 in order to finance both the cost of the original contract and the cost of the site work.[3] Without informing the Ciprianos, Kenneth Beaudoin, co-owner of the plaintiff, estimated in January, 2006, that the total work would cost approximately $283,000, which apparently included the original contract amount of $155,000, plus the amounts agreed on for site work, as well as estimates for additional work that he believed the project

---

[3] The Ciprianos previously had obtained a loan from Wachovia Mortgage Corporation in the amount of $155,000, later revised to $185,168 to cover the cost of the installation of the septic system, in addition to the cost of constructing the home. Of the principal $240,000 of the loan from Naugatuck Valley Savings and Loan, $35,759.45 was used to pay off the loan from Wachovia Mortgage Corporation and other closing costs, and $9240.55 was paid as net proceeds to the Ciprianos. These payments left $195,000 to be drawn down on the amount secured by the construction mortgage.

required, but that went beyond the scope of the parties' initial contract and subsequent oral agreement. Beaudoin did not provide a written estimate of this total to the Ciprianos until May, 2006. The plaintiff had commenced work on November 19, 2005, and, pursuant to invoices issued by the plaintiff, the Ciprianos had made periodic payments on January 20, 2006, January 25, 2006, May 23, 2006, and July 20, 2006. The court found: "The [Ciprianos] were not fully aware of all the changes that went beyond the scope of the initial contract and the costs associated therewith."

On August 3, 2006, the plaintiff requested a payment of $44,325. The Ciprianos informed the plaintiff that they could no longer afford to continue paying for the construction of their log home. The funding on behalf of the Ciprianos from Naugatuck Valley Savings and Loan was suspended pursuant to bank guidelines because an insufficient amount of work had been performed since the previous construction loan draw request. The last invoice that the plaintiff sent to the Ciprianos reflected an outstanding balance of $63,303, due on August 29, 2006. The plaintiff filed a mechanic's lien in that amount[4] on December 14, 2006.[5] In October, 2007, the plaintiff commenced an action to foreclose the mechanic's lien, and the court rendered judgment in favor of the Ciprianos on December 2, 2009.[6] Both the plaintiff and Naugatuck Valley Savings and Loan

[4] The amount was subsequently adjusted because of a payment in the amount of $10,895, which left a claimed balance under the mechanic's lien of $52,408.

[5] The mechanic's lien was dated December 12, 2006, but recorded on the land records on December 14, 2006.

[6] The court's decision in favor of the defendants, entitled "ORDER RE: MECHANIC'S LIEN," read in its entirety: "After hearing and based on the more credible evidence and pursuant to [General Statutes] § 49-33 et seq., the [c]ourt finds that the plaintiff's mechanic's lien dated December 12, 2006, has not been substantiated by a fair preponderance of the evidence and judgment concerning the subject mechanic's lien enters in favor of the defendants."

moved for an articulation, and the court subsequently issued a supplemental memorandum of decision on March 4, 2010. In that decision, the court set forth the parties' respective positions as follows: "The [Ciprianos'] position is that by August 3, 2006,[7] substantial performance on the subject residence had [been] completed. The plaintiff's position is that additional work [namely, dormer siding work] was done on the residence on or about September 21, 2006, which brings the mechanic's lien filing within the ninety-day perimeter of General Statutes § 49-34.[8] The [Ciprianos] raised various special defenses to the December 14, 2006 mechanic's lien, which include: the untimely filing of the lien; that certain work and billings were beyond the written or oral agreements; and that [they] did not consent to some of the work."

The court made the following findings of fact, which were, in their entirety:

"1. The [Ciprianos] did not knowingly consent to the expanded work done or proposed by the plaintiff, nor did they agree to the costs associated with such work.

"2. The work that was purportedly done by the plaintiff on September 21 and/or September 22, 2006, was

---

[7] It is unclear from the record whether the plaintiff performed work on August 3, 2006, August 4, 2006, or both days. The discrepancy is immaterial to the issues on appeal.

[8] General Statutes § 49-34 provides: "A mechanic's lien is not valid unless the person performing the services or furnishing the materials (1) within ninety days after he has ceased to do so, lodges with the town clerk of the town in which the building, lot or plot of land is situated a certificate in writing, which shall be recorded by the town clerk with deeds of land, (A) describing the premises, the amount claimed as a lien thereon, the name or names of the person against whom the lien is being filed and the date of the commencement of the performance of services or furnishing of materials, (B) stating that the amount claimed is justly due, as nearly as the same can be ascertained, and (C) subscribed and sworn to by the claimant, and (2) not later than thirty days after lodging the certificate, serves a true and attested copy of the certificate upon the owner of the building, lot or plot of land in the same manner as is provided for the service of the notice in section 49-35."

not within the contract, nor was the work 'ongoing' at that time. Moreover, even if that work was within the contract, it was done after an approximately one and one-half month delay. As a result, those dates do not represent the last day of substantial completion within the terms of the written or oral contract.

"3. The ninety-day period for lien filing purposes commenced on August 3, 2006, the last day on which agreed upon services or materials were furnished, thus representing the date of substantial completion. Therefore, the December 14, 2006 lien filing was beyond the ninety-day statutory limitation.

"4. The plaintiff failed to establish probable cause that the amount 'justly due' and owing to the plaintiff was within [the] terms of the contract or any verbal amendments to the said contract and/or change orders to the underlying base contract."

On appeal, the plaintiff challenges each of these factual findings as clearly erroneous.[9] We conclude that the plaintiff's arguments lack merit.

We first set forth the applicable standard of review. "On appeal, it is the function of this court to determine whether the decision of the trial court is clearly erroneous. . . . This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct

_____

[9] On March 11, 2010, Naugatuck Valley Savings and Loan filed a timely motion for review of the court's denial of its motion for further articulation. It sought to have the trial court articulate the following: (1) whether it found that the plaintiff performed any services at the subject property on September 21 or 22, 2006, (2) whether those services, if performed, were requested by the Ciprianos and (3) even if the plaintiff performed the services at the subject property on September 21 or 22, whether the court found that substantial completion of the plaintiff's services occurred on or before August 4, 2006, as argued by the defendants at trial, or whether substantial completion occurred on September 21 or 22. On May 12, 2010, this court granted the motion but denied the relief request therein.

and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. That is the standard and scope of this court's judicial review of decisions of the trial court. Beyond that, we will not go. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citation omitted; internal quotation marks omitted.) *Rollar Construction & Demolition, Inc.* v. *Granite Rock Associates, LLC*, 94 Conn. App. 125, 130, 891 A.2d 133 (2006).

We next set forth the relevant law. "[I]n Connecticut, the mechanic's lien is a creature of statute and gives a right of action which did not exist at common law. . . . The purpose of the mechanic's lien is to give one who furnishes materials or services the security of the building and land for the payment of his claim by making such claim a lien thereon . . . . Moreover, [t]he guidelines for interpreting mechanic's lien legislation are . . . well established. Although the mechanic's lien statute creates a statutory right in derogation of the common law . . . its provisions should be liberally construed in order to implement its remedial purpose of furnishing security for one who provides services or materials. . . . Our interpretation, however, may not depart from reasonable compliance with the specific terms of the statute under the guise of a liberal construction." (Internal quotation marks omitted.) Id., 129. Pursuant to § 49-34, a mechanic's lien must be filed within ninety days after the plaintiff ceases providing services

or furnishing materials. "No mechanic's lien may exceed the price which the owner has agreed to pay for the building being erected or improved, and the owner is entitled, furthermore, to credit for payments made in good faith to the original contractor before receipt of notice of such a lien or liens. General Statutes §§ 49-33 and 49-36." *Seaman* v. *Climate Control Corp.*, 181 Conn. 592, 596, 436 A.2d 271 (1980).

We conclude that there is evidence in the record to support the court's factual findings. The plaintiff claims that the siding work purportedly done on September 21 and/or September 22 was contemplated by the contract and, therefore, that it was clearly erroneous for the court to refer to such work as " 'expanded work' " and to conclude that it was not within the contract. The plaintiff's argument fails. The contract specifically provided for work in the amount of $155,000 and that any alterations involving additional costs must be agreed to in writing. Unbeknownst to the Ciprianos, however, payments they previously had made were applied toward certain other work that the plaintiff performed that was beyond the scope of the parties' initial contract and that was not executed in writing as contemplated by the initial contract.[10] Additionally, work beyond the scope of the original price contemplated by the contract was performed prior to work covered by the contract price. The plaintiff considered amounts paid at the time to be compensation for the unauthorized work, while the Ciprianos thought that their payments were for work within the contract price. As the project approached completion, then, the Ciprianos ran out of money before the job was done. In effect, the plaintiff filed a mechanic's lien to secure payment of amounts

---

[10] Beaudoin testified, for instance, that he did not inform the Ciprianos of work outside the scope of the initial contract, such as site work for adding gravel due to wet conditions and adding geotextile fabric, prior to doing such work.

that had never been agreed to by the Ciprianos. The plaintiff did not execute written change orders, as required by the contract, and, accordingly, any sum the Ciprianos paid to the plaintiff for work should have been applied toward the original contract price. Dianne Cipriano testified that she informed the plaintiff several times that she could spend up to approximately $200,000 on the construction.[11] Accordingly, the court's finding that the Ciprianos did not knowingly consent to the price for expanded work done or proposed by the plaintiff was not clearly erroneous. Similarly, because there is evidence that the price of the work was beyond the price contemplated by the contract, the court's finding that the plaintiff failed to establish probable cause[12] that the amount "justly due"[13] to the plaintiff was within the contract was not clearly erroneous.

Additionally, the court found: "The work that was purportedly done by the plaintiff on September 21 and/or September 22, 2006, was not within the contract . . . ." If work was performed on September 21 and/or September 22,[14] then the court's finding that there was no agreement by the parties to the amounts paid for such work to be completed was not clearly erroneous. As previously stated, the plaintiff applied payments that the Ciprianos had made toward work that was beyond the price contemplated by the initial

[11] Dianne Cipriano testified that she did not have an understanding while she was receiving invoices from the plaintiff that Beaudoin thought the construction would cost $283,000.

[12] General Statutes § 49-35b (a) requires that a lienor "establish that there is probable cause to sustain the validity of [the] lien."

[13] See footnote 8 of this opinion.

[14] The court did not make a finding as to whether work was performed on these dates. Clearly, if work was not performed on these dates, the mechanic's lien was not timely filed because the last date on which services were performed or materials furnished, prior to the purported dates in September, was August 3 or 4, 2006. The mechanic's lien was filed December 14, 2006, well beyond the ninety day statutory period calculated from August 3 or 4, 2006.

contract without informing the Ciprianos that such additional work would exceed the approximately $200,000 that they had communicated to the plaintiff that they had to pay for the construction. Prior to the plaintiff's purported return in September, the Ciprianos informed the plaintiff that, because they could not obtain money from the bank, they could not continue to pay him. Dianne Cipriano testified that Beaudoin responded that "he would not do another ounce of work in [the] house until he got his money." "[W]e note that the court's ruling rested in large part on its evaluation of testimonial evidence. It is axiomatic that we defer to the trial court's assessment of the credibility of witnesses and the weight to afford their testimony." (Internal quotation marks omitted.) *36 DeForest Avenue, LLC* v. *Creadore*, 99 Conn. App. 690, 695, 915 A.2d 916, cert. denied, 282 Conn. 905, 920 A.2d 311 (2007). Therefore, it was not clearly erroneous for the court to find that work purportedly done in September, if any, was not within the contract.[15]

The court's finding that August 3, 2006,[16] represented the date on which the ninety day period commenced for lien filing purposes was not clearly erroneous. Pursuant to § 49-34, the plaintiff was required to file a mechanic's lien within ninety days after it ceased performing the services or furnishing the materials for the construction of the home. The plaintiff's time records reflect that work was performed on the Ciprianos' construction project on August 4, 2006,[17] and the parties

---

[15] Because we conclude that the court's finding that any work purportedly done on September 21 and 22 was not within the contract is not clearly erroneous, we need not review the court's finding in the alternative that "even if that work [purportedly done on September 21 and/or September 22, 2006] was within the contract, it was done after an approximately one and one-half month delay. As a result, those dates do not represent the last day of substantial completion within the terms of the written or oral contract."

[16] See footnote 7 of this opinion.

[17] See footnote 7 of this opinion.

do not dispute that work within the contract was performed on this date. Likewise, the court's finding that the December 14, 2006 lien filing was beyond the statutory limitation is not clearly erroneous because December 14, 2006, is clearly more than ninety days after August 3 or August 4, 2006.

The judgment is affirmed.

In this opinion the other judges concurred.